THE MENGEL COMPANY et al., appellants,

*v.*

. D. VAN NESS PIERSON et al., respondents.

[Decided February 1st, 1926.]

On appeal from a decree of the court of chancery, where Vice-Chancellor Fielder filed the following conclusions:

"All the stockholders of the Keystone Churning Company, a corporation, were stockholders of Ammon & Person, another corporation, and the directors of the Keystone company were also directors of Ammon & Person. The Keystone company, being unable to continue its business with profit, called a meeting of its larger creditors and through its directors, all of whom were present at the meeting, requested the creditors to refrain from legal proceedings against the company and permit the directors of the Keystone company to liquidate its assets, the inducement offered being that Ammon & Person would pay a note of the Keystone company on which Ammon & Person were endorsers and would subordinate its claim thereon, together with other claims it held against the Keystone company, to the claims of other creditors. The further inducement offered the creditors at this meeting was that the directors of the Keystone company could dispose of the assets of the company to better advantage to the creditors than at a forced sale under bankruptcy or insolvency pro- . ceedings. The result of the meeting was that the Keystone company, its creditors, and the Ammon & Person corporation entered into a written agreement, dated April 5th, 1923, embodying the terms of the proposition submitted at the creditors' meeting, and whereby, among other things, the Keystone company agreed to proceed with all reasonable speed to liquidate its assets and to distribute the proceeds among its creditors (other than Ammon & Person), until such

creditors were paid in full. Thereafter, the creditors left the directors of the Keystone company in undisturbed possession of its assets, and relied upon the directors to reduce such assets to cash. At the creditors' meeting referred to a balance sheet of the company's assets and liabilities was exhibited to the creditors, which showed that the assets exceeded the liabilities (including the Ammon & Person claims) by about $50,000. The principal asset was the company's manufacturing plant and equipment in Jersey City, listed on the balance sheet at cost, and it was stated at this creditors' meeting, by or for the directors, that the land and building were worth more than $60,000, and would sell for at least that sum. This property was subject to a first mortgage of $18,000 and a second mortgage of $12,000. Four months after the agreement was signed the second mortgagee commenced foreclosure proceedings, and the land and building were sold by the sheriff November 15th, 1923, for the amount of the decree in foreclosure. The directors of the Keystone company have in hand for distribution among the creditors about $4,200, with but a small amount of equipment still to dispose of. The complainants are creditors of the Keystone company who entered into the agreement aforesaid, their total claims being about $13,000. They bring this action against the directors of the Keystone company, charging that under the agreement the directors became trustees of the assets of the Keystone company for the benefit of the complainants and such other creditors as joined in said agreement and as such trustee, they were bound to manage and liquidate the assets with fidelity and skill, but that they were negligent in their trust, in that they failed to dispose of the company's land and buildings at their fair value, and permitted them to be sold under foreclosure for a wholly inadequate price. They pray that the defendants account for the assets of the Keystone company, and that they be charged with the value of the equity of the land and building above the mortgages.

· "Under the agreement the defendants became trustees of the assets of the Keystone company for the benefit of the

creditors. As such trustees it was their duty to act with care and vigilance, and to manage and dispose of the assets with the same care, diligence, prudence and skill which they would bring to the conduct of their own transactions. They were bound to perform their duties actively and not passively, and to be diligent and careful in preserving the trust property and in reducing it to cash. For honest mistakes, which a prudent and careful man might make, they are not responsible. *Williams* v. *McKay, 40 N. J. Eq. 189; Monroe* v. *Osborne, 43 N. J. Eq. 248; Speakman* v. *Tatem, 48 N. J. Eq. 136; affirmed, 50 N. J. Eq. 484.*

"The evidence shows that the Keystone company purchased its plant in December, 1919, for $63,500, and thereafter expended considerable money on it for its business purposes. An expert on real estate values, produced by the defendants, testified that values in the locality had remained stable since 1919, although he also testified that the market value of the land and building at the time of the foreclosure sale, for ordinary uses as an industrial or factory property, was $42,000. I gather from his testimony that, to one desiring the property for a use somewhat similar to that for which the Keystone company used it, its value was more than $42,000. It is certain from the representations as to value, made by or for the defendants at the creditors' meetings at which the agreement was proposed, that the defendants believed the property to be worth at least $50,000 for ordinary industrial purposes, and, after the agreement was executed, they offered it for sale at $100,000, although later offering to accept a less sum, the lowest asking price not being shown by the testimony. The purchaser at the foreclosure sale has rented the property under a five years' lease, with the privilege of two years' renewal, at the rate of $600 per month, the tenant being required to pay the water rent. As against these, *indicia* of the fair value of the property is the fact that it was sold at sheriff's sale, after due, legal advertisement, subject to prior liens, for a sum which represents a value of about $31,500.

*99 N. J. Eq.* Mengel Co. *v.* Pierson.

"I am satisfied that the defendant used reasonable efforts and proper care and diligence in endeavoring to effect a private sale of the property. They offered it to many persons and corporations; advertised it in several newspapers and listed it with real estate agents, all without avail. I do not think, however, that, having failed in their efforts to make a private sale, they did all that prudent and careful men should have done. The *subpœna ad respondendum* in the foreclosure suit was served in August, 1923, and the defendants turned it over to their attorney, and thereafter neither he nor they paid any attention to the suit. The property was sold by the sheriff on the day advertised, November 15th, 1923, no one appearing to bid, except a representative of the holder of the mortgage and a real estate speculator, who makes it a practice to attend sheriff's sales to 'pick up bargains,' and who bought the property for the amount of the decree. The defendants did not concern themselves to ascertain the advertised date of the sale, and they failed to notify the creditors that foreclosure proceedings were pending, although the complainants herein, or some of them, from time to time and up to the day before the sale, requested information from the defendants concerning the progress of their trusteeship. The complainants were not aware that the mortgage was being foreclosed, and neither the defendant nor the creditors knew that the property had been sold until after the sheriff's deed had been delivered to the purchaser. The defendants seek to excuse themselves for thus passively permitting the property to be sold, by saying that they had no funds in hand with which to protect the property, and that their unsuccessful efforts to make a private sale (which continued down to the time of the sheriff's sale) convinced them that there was no market for the property at a price above the liens thereon. But there were several things they could have done, and their failure to do all, or some of them, cannot be said to be due to an error in judgment, which a prudent, diligent and careful trustee might make. Immediately upon receiving notice of the foreclosure suit, when they had made some unsuccessful attempts at private sale, and when they

were without funds to protect the property from foreclosure, they should have notified the creditors of the situation. They could also have put the property up at public sale and thus determine whether or not it would bring anything above the encumbrances.    They could also have kept watch on the progress of the foreclosure, and could have given notice of the sheriff's sale by other and more prominent means than the usual fine print of published legal notices, such as advertisement in large type in the public press and circular notices to creditors, real estate dealers and persons likely to be interested in the sale of this class of property.

"A prudent and careful trustee would have done these things, and if the evidence showed that the property could have been sold for a better price than was realized at the sheriff's sale, I would hold the defendant liable for neglect of duty, but there is no evidence that had the creditors been notified that foreclosure proceedings were pending, they would have arranged to buy the mortgage, or obtained an extension, and would have found a purchaser at a price which would have netted something for the creditors.    Neither is there any evidence that had the defendants put the property up at public sale, or had they given the sheriff's sale wider publicity, a bidder would have appeared and offered more than was realized for the property at the sheriff's sale. Mere speculation that the property would have brought more than the amount of the liens thereon, had the defendants followed the courses I have mentioned, is not sufficient to hold them liable to the complainants for their failure to act in the manner in which I think prudent and careful trustees should have acted.    *Monroe* v. *Osborne, supra.*

"The result is that the complainants' prayer for an accounting will be granted, but the defendants will not be charged with loss on account of the foreclosure sale of the property in question."

*Messrs. McDermott, Enright & Carpenter,* for the appellants.

*Messrs. Fisk & Fisk,* for the respondents.

*99 N. J. Eq.*   In re Refrigerating Co.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, CAMPBELL, LLOYD, MCGLENNON, KAYS, HETFIELD, JJ. 11.

*For reversal*—KATZENBACH, WHITE, VAN BUSKIRK, JJ.